757 P.2d 186

Forrest J. WILLIAMS and Kay Williams, husband and wife, Plaintiffs-Appellants,

v.

Ronald M. BLAKLEY; Blakley Engineers, Inc., and N.D. (Del) Geddes and Donald N. Pearson, dba GP Engineering, Defendants-Respondents.

No. 16551.

Supreme Court of Idaho.

June 15, 1987.

On Rehearing June 23, 1988.

Eberle, Berlin, Kading, Turnbow & Gillespie, Chartered, Boise, for appellants. Richard K. Lierz argued.

William J. Brauner, Caldwell, for respondent Blakley.

Anderson, Kaufman, Ringert & Clark, Boise, for respondents Geddes and Pearson. James G. Reid argued.

SHEPARD, Chief Justice.

This is an appeal from summary judgment in favor of respondent-defendants in an action essentially asserting professional malpractice in the performance of engineering functions. Respondents asserted, and the trial court agreed, that the cause of action was barred by the statute of limitations. I.C. § 5-219(4). We reverse and remand for further proceedings.

In May 1978 the then owner of certain property (Campbell), employed Geddes and Pearson dba GP Engineering, to perform a boundary survey to be used in connection with the sale of the property to plaintiffs-appellants Williams. That survey was completed and recorded in June 1978, and the Williams purchased the property in August, which they intended to subdivide into smaller lots to be known as Granite View Subdivision. In the course of that 1978 survey, GP Engineering located and

marked on the ground what they asserted to be a section corner.

Following the Williamses' purchase of the property, they employed GP Engineering for additional surveys to facilitate the subdivision of the property. GP Engineers utilized their earlier survey, completed the additional services, and filed a certificate of survey in the plat of Granite View Subdivision with the Adams County Recorder. The Williamses were notified that the survey performed by GP Engineering did not comply with the applicable requirements, and thus development of the subdivision was precluded. In August 1980, GP Engineering ceased to exist as a separate entity and was sold to Blakley Engineers. Thereafter, in 1980 and 1981, Blakley Engineers performed additional engineering pertaining to sewage disposal in the subdivision.

In the fall of 1981 the Williamses hired a new engineer, Richard Johnson, to complete a preliminary plat for, and do the staking and relocation of the subdivision road system. During the Johnson survey it was discovered that the section corner allegedly located by GP Engineering in 1978 was erroneous, and differed from the location of the same section corner marked by the Idaho Department of Transportation in 1981. The differing location of the section corner was evidently significant to the extent of 20–30 feet. In an attempt to resolve the discrepancy, Blakley Engineers filed a complaint with the Idaho Association of Land Surveyors, and maintained that the section corner located and marked during the survey by GP Engineering in 1978, was the correct section corner. However, in August 1982, the complaint was resolved against Blakley Engineers, and it was held that the correct section corner was that located by the Department of Transportation.

In May 1984, the instant complaint was filed against GP Engineering, Blakley Engineers, Inc., and Blakley, Geddes and Pearson as individuals. Among other allegations it was asserted that the defendants were guilty of professional malpractice. In response to the complaint, defendants asserted that the action was barred by the statute of limitations, I.C. § 5–219(4), and moved for summary judgment. The court held that since the Williamses were informed of the discrepancy between the asserted section corners no later than December 31, 1981, that the cause of action accrued by that date, the statute of limitations began to run and had expired, and hence summary judgment was granted.

The Williamses here, and in the court below, maintain that the doctrine of equitable estoppel prevents defendants-respondents from pleading and utilizing the statute of limitations, although the time limits thereof may have expired. The Williamses assert that they did not know, and could not discover, the alleged discrepancies in the asserted section corners until following a new survey in the fall of 1981, three years after the initial GP Engineering survey. The Williamses further assert that thereafter the defendants-respondents continued to maintain that the section corner location of June 1978 was correct, that the section corner located by the Department of Transportation was erroneous, and that such statements and assertions of defendants-respondents continued until August 10, 1982, when the correct location of the section corner was determined. The Williamses assert that they had, and have, no surveying or engineering expertise, cannot be held to be required to have discovered which of the corners was correct and which erroneous, that the defendants-respondents were licensed professionals, that the defendants-respondents' statements and representations were intended to be relied upon, and that the Williamses did in fact rely upon those representations and thus delayed in initiating the action. The Williamses argue that the statements, representations, and the reliance placed thereon gives rise to inferences which demonstrate equitable estoppel, and although the inferences may be conflicting at the summary judgment stage, the party against whom summary judgment issought is entitled to the benefit of conflicting inferences.

It is axiomatic that at the point of summary judgment the facts, the record, and all legitimate inferences arising therefrom are to be construed most favorably toward

the party against whom summary judgment is sought. I.R.C.P. 56(c); *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Boise Car & Truck Rental Co. v. WACO, Inc.*, 108 Idaho 780, 702 P.2d 818 (1985). Here, as above noted, it is asserted that legitimate inferences arise from the facts which demonstrate the application of the doctrine of equitable estoppel which operates as a bar to defendants-respondents' defense of the statute of limitations.

This Court, and other jurisdictions, have held that a party can be estopped from pleading a statute of limitations. *See Twin Falls Clinic & Hospital Building Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982); *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Groseth v. Ness*, 421 P.2d 624 (Alaska 1966); *Klamm Shell v. Berg*, 165 Colo. 540, 441 P.2d 10 (1968); *Lyden v. Goldberg*, 260 Or. 301, 490 P.2d 181 (1971); *Gould v. Bird & Sons, Inc.*, 5 Wash.App. 59, 485 P.2d 458 (1971).

This Court has held, *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 607 P.2d 1055 (1980); *Idaho Title Co. v. American States Ins. Co.*, 96 Idaho 465, 531 P.2d 227 (1975); *Bjornstad v. Perry*, 92 Idaho 402, 443 P.2d 999 (1968), that the elements of equitable estoppel are a false representation or concealment of a material fact with actual or constructive knowledge of the truth; the party asserting estoppel did not know or could not discover the truth; the false representation or concealment was made with the intent that it be relied upon; and the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice. In the case at bar, we hold that there are questions of material fact and questions of legitimate inferences to be drawn therefrom which remain for resolution by a fact finder. Hence, the granting of summary judgment in favor of defendants-respondents was improper.

It is argued, nevertheless, that I.C. § 5-219 continues to be controlling notwithstanding the common law doctrine of estoppel. I.C. § 5-219 provides in pertinent part:

> Within two years ... (4) an action to recover damages for professional malpractice ... provided, however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of a person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; then all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer. . . .

Estoppel is a creature of the common law, and statutory changes purporting to abolish it are not presumed but must be shown by a clear intent to alter or oppose the common law or to change the common law by necessary implication. *Industrial Indemnity Co. v. Columbia Basin Steel & Iron, Inc.*, 93 Idaho 719, 471 P.2d 574 (1970); *Hancock v. Halliday*, 65 Idaho 645, 150 P.2d 137 (1944). The language of the statute demonstrates no clear intent to repeal or abolish the doctrine of equitable estoppel, nor do we view the language of the statute as containing a necessary implication that the doctrine of estoppel be repealed or abolished. Although the language of the statute indicates that the limi-

tation is not to be extended by any continuing relationship, nevertheless we do not deem that language to preclude the application of the doctrine of estoppel, where as here it is asserted that representations were made and properly relied on, which encouraged or prevented the Williamses from filing their cause of action until after the expiration of the statute of limitations. We, of course, do not pass upon the validity of the assertions or how the ultimate truth will be determined. We hold only that such search for truth must be accomplished by a finder of fact, and is erroneously decided at summary judgment.

We further note that the trial court, upon remand, should consider application of I.C. § 5–241 to the instant case. I.C. § 5–241 delineates the time within which actions arising out of the design or construction of improvements to real property are deemed to have accrued. As stated in *Twin Falls Clinic & Hospital Building v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982):

> An action founded in contract and arising out of the design or construction of improvements to real property must be brought within five years from the date of the completion of the construction. A cause of action founded in professional malpractice arising out of the design or construction of improvements to real property must be brought within two years of the discovery of the alleged malpractice and in no event later than eight years following the completion of the construction.

Reversed and remanded for further proceedings; costs to appellants.

DONALDSON, BAKES, BISTLINE and HUNTLEY, JJ. concur.

## ON REHEARING

A petition for rehearing was filed and granted. Following rehearing the majority of the Court continues to concur in the original opinion.

BISTLINE, HUNTLEY and JOHNSON, JJ. concur.

BAKES, Justice, dissenting:

After reargument in this matter, I am of the opinion that the trial court was correct in ruling in effect that any equitable estoppel which might have occurred from the defendant's conduct was dissipated no later than December, 1981, and therefore the two-year statute of limitations had run before the plaintiff's action was filed on May 8, 1984. That dissipation of any equitable estoppel is based upon the fact that in August of 1980 Blakley, who was then the county engineer and surveyor, notified the plaintiff that the GP Engineering survey was incorrect. A year after that, the plaintiff hired his own surveyor, Richard Johnson, who resurveyed the property in December of 1981 and notified the plaintiff again that the GP Engineering survey was incorrect.

As the Court's earlier opinion states at page 4:

> "[T]he elements of equitable estoppel are [1] a false representation or concealment of a material fact with actual or constructive knowledge of the truth; [2] *the party asserting estoppel did not know or could not discover the truth;* [3] the false representation or concealment was made with the intent that it be relied upon; and [4] *the person to whom the representation was made,* or from whom the facts were concealed, *relied and acted upon the representation* or concealment to his prejudice." (Emphasis and bracketed numbers added.)

After the plaintiff was told by the county surveyor Blakley in August of 1980 that the GP Engineering survey was incorrect, and after the plaintiff hired his own surveyor Richard Johnson who, after resurveying the property, also advised the plaintiff in December of 1981 that the GP Engineering survey was incorrect, at least three of the four requirements for equitable estoppel as set out on page 4 of our previous opinion were no longer present. Particularly, element number [2], "the party asserting estoppel did not know or could not discover the truth," was no longer present. By December of 1981 the plaintiff knew

that the defendant's survey was inaccurate in the opinion of two other surveyors.

Secondly, after the plaintiff was advised of the results of his own surveyor's location of the corner, it is difficult to see how it can be said that there was a continuing concealment or false representation by GP Engineering (which by that time was out of business) made with the intent that it be relied upon. Merely because GP stood by its own survey, and did not confess error, does not amount to a continuing concealment. If a claimant's obtaining independent professional advice (here the independent Johnson survey) disclosing the first professional surveyor's negligence does not dissipate the effect of this element of equitable estoppel, then there is no way that the statute of limitations in I.C. § 5–219(4) could ever run against professional malpractice short of the professional confessing his negligence. I don't believe that the doctrine of equitable estoppel requires that.

Finally, the fourth element of equitable estoppel set out in our earlier opinion is missing. I don't see how it can be said that after December, 1981, the plaintiff "relied and acted upon the representation" contained in the GP Engineering survey when he had the August, 1980, report of county surveyor Blakley and his own survey by Johnson which told him otherwise.

The four requirements for an equitable estoppel set out in our original opinion no longer existed after December, 1981. By the time the plaintiff filed his action in 1984, the two-year statute of limitations had run.

Accordingly, I would affirm the district court.